UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Criminal Action No. 07-189-JMH |
| ) | |
| v. ) | |
| ) | |
| MICHAEL SHAWN EVANS, ) | **MEMORANDUM OPINION AND ORDER** |
| ) | |
| Defendant. ) | |

**       **       **       **       **

This matter is before the Court on Defendant Michael Shawn Evans's ("Evans") Motion to Suppress [Record No. 22], in which Evans has requested that the Court suppress the evidence[1] obtained as a result of a traffic stop on September 14, 2007, pursuant to the Fourth Amendment to the United States Constitution. Specifically, Evans claims that the evidence should be excluded from the trial of this matter because (1) the police officers had no reason to stop the car occupied by Evans, and (2) it was impermissible for the officers to detain Evans for 2½ hours, handcuffed in the back of a police cruiser, with no warrant or charges being placed.  The United States of America filed a response in opposition to the motion [Record No. 24], and the Court heard argument on April 29, 2008.  At the conclusion of that

---

[1] The evidence includes five Oxycontin pills, one pill that was crushed in the seat and four whole 15 mg pills, as well as approximately $6,550 found in Evans' pockets.

hearing, the undersigned announced that he would take the matter under advisement.

## I. Factual Findings

Based upon the testimony provided at the hearing and the evidence in the record the Court finds the facts to be as set forth below.

On September 14, 2007, Madison County officers and members of the Central Kentucky Area Drug Task Force were conducting surveillance at 101 Bellevue Drive, Richmond, Kentucky, the home of Pernell and Michael Evans. From 6:45 p.m. until 7:45 p.m., officers observed approximately seven vehicles pull in front of or into the drive of the residence. In each instance at least one individual would exit the vehicle and enter the house. After gaining entrance to the residence the individual would remain in the residence for approximately five to eight minutes before exiting the residence, returning to the vehicle, and driving away. At approximately 7:15 p.m., Deputy Jason Parker followed an individual, later identified as Colbert Gautreaux, leaving the Evans' home, and ultimately stopped him for a traffic violation. Gautreaux gave the officer consent to search his vehicle. Gautreaux was found to be in possession of seven oxycodone pills and marijuana, which he told the officer he purchased from Michael Evans.

Based on the observed activity at the Evans' residence and

Gautreaux's statement that he had obtained the pills that day from Michael Evans, Captain Rick Johnson began preparing an application for a search warrant for the Evans's residence. While the application for the search warrant was being prepared, Michael Evans and a female, later identified as Jessica Delarosa, left the Evans home in a 2000 Camaro which the officers knew to be owned by Evans.

Deputy Sheriff Tim Humble stopped the vehicle as instructed, shortly after Evans vehicle left a store approximately two miles from the Evans residence.[2] According to Deputy Humble, Evans exited the vehicle and, as Deputy Humble exited his police car, Evans began to run and placed his hand in his right front pants pocket. Deputy Humble advised Evans to remove his hand from his pocket and stop, which he did. Deputy Humble stated that when he made contact with Evans, he could see a large amount of U.S. currency in Evans's pocket. Deputy Humble then secured Evans, patted him down to make sure he had no weapons on his person, handcuffed his hands behind his back, and placed him in the back of a cruiser while officers secured a search warrant for the 101 Bellevue Drive residence and Michael Evans's person.

---

[2] There is some confusion as to the exact time this stop occurred. A report written by Allen Horton of the Central Kentucky Area Drug Task Force states that Evans was stopped at approximately 8:00 p.m. The citation which Deputy Humble issued to Jessica Delarosa lists the violation time as 8:48 p.m. However, the 911 report indicates that Deputy Humble stopped Evans at approximately 9:08 p.m.

3

At approximately 9:00 p.m. officers secured the 101 Bellevue Drive residence and Pernell Evans pending the application for the search warrant.  At 10:20 p.m., Hon. William Clouse, Madison County District Judge, issued a search warrant for the residence and the persons of Michael Evans and Pernell Evans.  Once the warrant was obtained Captain Johnson proceeded with the search warrant to Moberly Ave., where Deputy Humble was located with Michael Evans and Delarosa.  At approximately 10:30, pursuant to the search warrant, Evans was searched and the officers found $1,000.00 in one of Evans's pants pockets and $5,550.00 in another.  Deputy Humble then transported Evans to the residence at 101 Bellevue Drive, while Captain Johnson and other officers conducted a search of the Camaro in which he had been a passenger.

At approximately 11:26 p.m the search warrant arrived at the 101 Bellevue Drive residence and the officers searched the home. During the search officers found  oxycodone, marijuana, and drug paraphernalia.  Based on the drug evidence Michael Evans was formally arrested at approximately 11:36 p.m.  At that time, officers removed Evans from the backseat of the police cruiser to conduct a more thorough search.  A further search of Evans found no drugs.  However, shortly thereafter, Deputy Humble checked his police vehicle where he found what appeared to be a crushed oxycodone pill on the backseat in the same location that Evans had been sitting.  A further search of the vehicle revealed four pills,

4

later determined to be oxycodone, located under the backseat of the police vehicle. These items were found on September 15, 2007 at approximately 12:13 a.m.

## II. Analysis

The Fourth Amendment says that the "right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const., Amdt. 4. A seizure of a person has been identified as occurring at that point in time when, "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). Clearly the stop and detainment of Evans was a "seizure" within the meaning of the Fourth Amendment. The question for this Court is whether the stop and the seizure were reasonable.

### A. The Stop

Evans argues that the initial stop was impermissible because the statement by Gautreaux that he had purchased the oxycodone pills and marijuana from Michael Evans, by itself, created no reason to conduct a traffic stop. The officers stopped Evans on the belief that he was involved in illegal drug activity. Given the totality of the circumstances this belief was reasonable. The record shows that in the hour that the officers were doing surveillance on the 101 Bellevue Drive residence seven cars drove

up to the house and numerous individuals went into the home for short periods of time. Captain Johnson reported that this type of activity is consistent with illegal drug activity. The officers also knew of no other plausible explanation for why such activity would be occurring at the Evans residence. Gautreaux, directly after leaving the Evans residence, was in possession of oxycodone and other unlawful drugs which he told the officers that he received from Michael Evans. He was interviewed at the scene as well as at the Madison County Sheriff's Office. This allowed the officers to observe and assess Gautreaux's reliability. Based upon the above evidence the Court finds that the officers had probable cause to believe that Evans was involved in criminal activity and therefore the stop was valid.

**B. The Seizure**

The next question is whether the seizure was reasonable. Evans cites *Terry v. Ohio*, 392 U.S. 1 (1968) and *U.S. v. Davis*, 430 F.3d 345 (6th Cir. 2005) for the idea that once the officers stopped Evans and found nothing they could not continue to detain him. These cases are inapposite. As discussed above, unlike the situations in *Terry* and *Davis,* the stop of Evans was based solely on suspected illegal drug activity not a traffic violation. Thus, the standards that apply to *Terry* stops are not the standards that apply to this case. The facts of this case are more closely analogous to *Illinois v. McArthur*, 531 U.S. 326 (2001). In

6

*McArthur* police officers were informed by the wife of the defendant that he was in possession of drugs. *Id*. at 329. After the defendant refused consent to search his home, police officers detained him on the front porch for two hours while they obtained a search warrant for the residence. *Id.* The defendant challenged his detention as unreasonable under the Fourth Amendment. The Court focused on reasonableness as the essential element of any intrusion on privacy interests that implicate the Fourth Amendment. The Supreme Court found the warrantless seizure of the defendant in *McArthur* reasonable for the following reasons: 1) police had probable cause to believe contraband was in the home; 2) police had good reason to fear that the defendant might destroy the evidence; 3) officers balanced law enforcement needs with the demands of personal privacy by neither searching the trailer nor arresting the defendant while obtaining the warrant; 4) the restraint was only imposed for a limited period of time. *Id*. at 331-32.

Applying this case under the same framework as *McArthur*, the Court finds that the seizure of Evans was not unreasonable as the officers properly balanced law enforcement and private interests. The officers had an interest in prohibiting Evans from fleeing, destroying, or concealing any drugs that may have been in his possession. On the other hand, Evans's privacy interest was protected. While Deputy Humble did perform an initial patdown search of Evans to verify that no weapons were on his person, a

7

thorough search of Evans's person was not performed until after the search warrant had been issued. No evidence or statements were taken from Evans in the time between the start of the seizure and the issue of the search warrant. As stated above the officers had probable cause to believe that Evans had unlawfully distributed oxycodone and other drugs. Had the officers chosen to do so, they could have made a warrantless arrest. *See U.S. v. McNeal*, 955 F.2d 1067, 1071 (6th Cir. 1992)("A warrantless arrest must be supported by the existence of probable cause of sufficient weight to support a belief that the individual detained committed a criminal offense."). By seeking a warrant to search his person and residence, even when they might have arrested and searched him without one, the officers evidenced respect for Evans's privacy.

The length of the detainment was also not unreasonable. Though the exact time of his detainment is not certain, it is clear that Evans was seized somewhere between 8:00 p.m. and 9:00 p.m. The search warrant, which Captain Johnson had already begun to draw up at the time of Evans's seizure, was issued by Judge William Clouse from his private residence at 10:20 p.m. Captain Johnson proceeded with the warrant directly to Evans's location at Moberley Avenue where he was searched. Evans's pre-arrest seizure continued until approximately 11:36 p.m. when, after finding drugs in the residence, Evans was arrested. Given the facts of this case, Evans's pre-arrest seizure lasted "no longer than reasonably

8

necessary for the police, acting with diligence, to obtain the warrant." *McArthur,* 531 U.S. at 332.

The fact that Evans was not located at the residence is not dispositive. The Sixth Circuit has held that the seizure of an individual who is not physically located at the residence where a search warrant is being executed but is in "close proximity" to said residence is reasonable. *See United States v. Cochran*, 939 F.2d 337 (6th Cir. 1991). The Sixth Circuit stated that the issue is not geographic proximity to the residence but rather the police performance, i.e., whether the police detained the defendant as soon as practicable after departing from his residence. *Id*. In this case Evans was stopped two miles away from his home, shortly after he left his residence. Evans argued at the hearing that *Cochran* can be distinguished from the instant case by the fact that in *Cochran* the officers had already secured a warrant for the defendant's residence at the time of the defendant's detainment, whereas in this case a warrant was not obtained until after the seizure began. However, under *McArthur* it is clear that a reasonably tailored warrantless seizure that secures law enforcement needs while protecting privacy interests does not violate the Fourth Amendment. 531 U.S. 326 (2001). As stated above, the seizure in this case did just that. The officers actions in detaining Evans while a search warrant was being obtained for Evans and the 101 Bellevue Drive residence were

9

reasonable and the evidence found as a result need not be suppressed.

Accordingly, **IT IS ORDERED** that the Motion to Suppress Evidence [Record No. 22] shall be, and the same hereby is, **DENIED**.

This the 7th day of May, 2008.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge